IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-021-RJC-DCK

| ANDRÉ R. JACKSON, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | **MEMORANDUM AND** |
|  | ) | **RECOMMENDATION** |
| v. | ) | |
|  | ) | |
| LOUIS DEJOY, Postmaster General, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss" (Document No. 30) filed March 7, 2024. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be granted in part and denied in part. Specifically, the undersigned recommends that the motion be denied with respect to Plaintiff's claim for retaliation in violation of Title VII based on the events of February 5, 2021, and that the motion be granted with respect to all other claims.

**I. BACKGROUND**

André R. Jackson, Jr. ("Plaintiff" or "Jackson"), appearing without counsel, initiated this action with the filing of a form "Complaint For Employment Discrimination" (Document No. 1) (the "Complaint") on January 14, 2022. In his Complaint, Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Document No. 1, p. 3). Specifically, the Complaint alleges discriminatory conduct including retaliation and asserts discrimination on the basis of race ("African American"), gender/sex (male), and disability or perceived disability ("Paranoid

Schizophrenia"). (Document No. 1, p. 4). Plaintiff alleges that the discriminatory acts occurred on February 5, 2021, and that Defendant is "still committing these acts" against him. (Document No. 1, p. 4). In his claim for relief, Plaintiff states that he also seeks damages for a December 2016 event involving Darren Canady, and for a variety of other distressing outcomes "over the years." Id. at p. 5.

Plaintiff's Complaint, including attachments, indicates that he was an employee of the United States Postal Service ("USPS") at all times relevant. (Document No. 1-2, p. 6). Plaintiff alleges that on February 5, 2021, "management disallowed his time and charged him Leave-Without-Pay (LWOP)." Id. at p. 2. Plaintiff alleges this act was intentional discrimination on the basis of retaliation for prior protected activity.

The Complaint and attachments indicate Plaintiff pursued three formal complaints for employment discrimination prior to February 2021. Id. at p. 7. Sheila Ford ("Ford"), Manager of Distribution Operations (MDO), was allegedly aware of these prior complaints. Id. at pp. 6–7. On February 5, 2021, Ford disallowed Plaintiff's time and charged him LWOP. Ford allegedly stated this was because Plaintiff "was on the clock, but not working in his assigned overtime operation" and "was repeatedly away from his work locations on any given day and had not attempted to correct his behavior." Id. at pp. 9–10. Plaintiff, by contrast, alleges that on the date in question "he clocked in for overtime and then went to the restroom," and that "whomever Ms. Ford had watching him failed to see him at the machine." Id. at p. 7. Plaintiff alleges management violated Postal Service regulations by "falsifying documents and conspiring to have him removed from the USPS." Id.

Plaintiff's Complaint asserts that he filed an administrative charge on February 5, 2021. (Document No. 1, p. 5). Plaintiff attaches the "Final Agency Decision" (Document No. 1-2, pp.

2

2–13) ("FAD") of the United States Postal Service regarding his administrative complaint. The FAD indicates that Plaintiff filed a formal Equal Employment Opportunity ("EEO") Complaint with the USPS on July 1, 2021, and received the FAD on December 15, 2021. Id. at pp. 2, 13. The FAD indicates that Plaintiff's administrative complaint "alleged discrimination based on Retaliation (Prior EEO Activity) when…[o]n February 5, 2021, management disallowed his time and charged him with Leave-Without-Pay (LWOP)." Id. at p. 2. The FAD further indicates that initially, the administrative complaint "included one additional allegation" that was dismissed for failure to state a claim on July 21, 2021. Id. However, nothing in the Complaint or its attachments provide more detail about the dismissed charge. The FAD states that Plaintiff had the right to appeal the Postal Service's final decision to the EEOC within 30 calendar days of receipt or, alternatively, "file a civil action in an appropriate U.S. District Court" within the applicable time frame. Id. at p. 12.

Plaintiff's Complaint also alleges that he received a Notice of Right To Sue letter from the EEOC on December 15, 2021. The Complaint does not include a copy of this Right To Sue letter, but it does include what appears to be a "Notice Of Appeal/Petition…To The Equal Employment Opportunity Commission…" (Document No. 1-2, p. 1). However, the signature date on this attached "Notice…" appears to have been redacted by hand and replaced with the date January 14, 2022, which is the date that Plaintiff filed his Complaint in this Court. Id. Plaintiff also attaches two pages of handwritten assertions to his Complaint. Id. at pp. 14–15. It is not entirely clear from the Complaint whether these materials were submitted as part of prior administrative proceedings.[1] In these pages, Plaintiff alleges, among other things, feeling threatened and harassed

---

[1] Defendant clarifies in the Motion To Dismiss that these materials "appear to be altered versions of the Plaintiff's EEOC Notice Of Appeal dated December 27, 2021." (Document No. 31, p. 4 n.3). Defendant indicates that the attachments to Plaintiff's Complaint appear to have altered the EEOC Appeal documents
3

by management, and writes that "Management is operating as mob-gang like attack on me to have me removed from the USPS." Id.

In his Complaint, Plaintiff requests reimbursement for his time related to the February 5, 2021, LWOP incident and "for being removed by Darren Canady in [December 2016] for 2 week[s] during Christmas season." (Document No. 1, p. 5). Plaintiff also requests "punitive and exemplary damages due to this act of retaliation over the years in the amount of $150,000," and damages for "pain and suffering for emotional distress due to having to work under these conditions with the people involved, mental anguish, defamation of character, no proper representation, depression at time going home in tears, from humiliation, low self esteem for being treated as less than a human being [and] for being conspired against" in the amount of $25,000. Id. at pp. 5–6.

On March 7, 2024, Defendant Louis DeJoy, Postmaster General ("Defendant") filed a "Motion To Dismiss" (Document No. 30) and "Memorandum Of Law In Support Of Defendant's Motion To Dismiss" (Document No. 31).

On March 8, 2024, the undersigned issued an Order (Document No. 33) in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), directing Plaintiff to file a response to Defendant's Motion To Dismiss and informing Plaintiff that "[f]ailure to file a timely and persuasive response may lead to the dismissal of this lawsuit." (Document No. 33).

On March 19, 2024, Plaintiff filed a *pro se* "Request To Deny The Defendant's Motion To Dismiss" (Document No. 36).

---

"to replace in two places the date '12/27/2021' with the date '1/14/2022,'…and to add to the handwritten addendum to the EEOC Notice of Appeal the following passage: 'Please check the camera footage for this date 2/5/2021 to confirm where I was during this time.'" Id.

4

On March 20, 2024, Defendant filed a "Notice Of Intention To File No Reply" (Document No. 37).

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

Where a complaint is filed by a *pro se* Plaintiff, courts have determined that the complaint should be liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Indeed, "the Fourth Circuit requires district courts to construe *pro se* complaints liberally to ensure that valid claims do not fail for lack of legal specificity." Morrison v. Res. Mgmt. Concepts, Inc., 3:16-CV-651-GCM, 2017 WL 1095067, at *2 (W.D.N.C. Mar. 21, 2017) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). However, this does not mean that district courts should "assume the role of advocate for the *pro se* plaintiff." Gordon, 574 F.2d at 1151. When a complaint clearly fails to express sufficient facts to support the alleged claim under federal law, courts are not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). "Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still 'allege facts sufficient to state all the elements of [the] claim.'" Morrison, 2017 WL 1095067 at *2 (quoting Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

### III. DISCUSSION

By the instant motion, Defendant "moves the Court to dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for

6

which relief may be granted." (Document No. 30). In the supporting Memorandum Of Law, Defendant argues that "[i]n this Title VII case, Plaintiff improperly seeks to expand the scope of claims and allegations beyond those previously asserted in his formal EEO complaint and administratively exhausted as a necessary prerequisite to this civil action." (Document No. 31, p. 1). Defendant argues that "[i]n addition, Plaintiff's Judicial Complaint should be dismissed for simple failure to state a claim…because, among other things, Plaintiff does not plausibly allege a causal connection between any protected activity by Plaintiff and any purported adverse action taken by USPS." Id. at p. 2.

Defendant offers context on the EEO complaint process for a covered federal employee, asserting that it "first involves consultation with an EEO counselor at the agency that employs him 'prior to filing a complaint in order to try to informally resolve the matter.'" (Document No. 31, p. 7) (quoting 29 C.F.R. § 1614.105(a)). Defendant asserts that "[i]f that process does not resolve the issue, the complaining employee must then file a formal complaint 'with the agency that allegedly discriminated against the complainant.'" Id. (quoting 29 C.F.R. §§ 1614.105(d), 1614.106(a)). Thereafter, Defendant asserts, "the EEO counsel submits a written report to the agency and complaining employee…and the agency then must either (1) accept and investigate the complaint, and/or (2) dismiss the complaint in part or whole on one of the grounds set forth in 29 C.F.R. § 1614.107." Id. at p. 8 (citing 29 C.F.R. §§ 1614.105(c), 1614.107).

Defendant contends:

> [H]ere the agency accepted for investigation one of Plaintiff's two retaliation (for prior protected activity) claims, the first claim with respect to the February 5, 2021 time disallowance/LWOP charge, and dismissed the second, the claim that on "May 11, 2021 an identified manager [not Plaintiff's manager who disallowed the time and charged LWOP] was loud and aggressive and followed him [Plaintiff] around the building" on grounds that it failed to state a claim for which relief may be granted.

7

Id. at p. 8. Defendant argues "[a] partial dismissal of a complaint is reviewable by an administrative law judge with the EEOC on appeal after final action is taken on the remainder of the complaint," and contends that "Plaintiff 'did not request a hearing before an EEOC Administrative Judge' after the final decision on the remaining first claim of his formal EEO Complaint." Id. (citing 29 C.F.R. § 1614.107(b); Document No. 30-1, pp. 16-17). Consequently, a Final Agency Decision was issued on December 15, 2021, providing notice of Plaintiff's right to appeal to the EEOC or to file a federal court action. Id. at pp. 8–9 (citing 29 C.F.R. § 1614.110(b)).

Defendant asserts that "[i]n late December 2021, Plaintiff filed his EEOC Form 573 Notice of Appeal/Petition-Complainant ("EEOC Notice [O]f Appeal")…with the EEOC Office of Federal Operations, which was docketed there on or about January 18, 2022." Id. at p. 4. Defendant asserts that "[o]n December 5, 2022, the EEOC affirmed the USPS's FAD and its finding of no discrimination." Id. (citing Edmond D. v. DeJoy, 2022 WL 18280227, at *3 (E.E.O.C. December 5, 2022) ("EEOC Decision")).

Plaintiff's "Request To Deny The Defendant's Motion To Dismiss" (Document No. 36) ("Response") asserts that "[f]or the [foregoing] reasons and all the others discussed in [P]laintiff's [C]omplaint, the present motion to dismiss should be denied…Also, for the fact that [Plaintiff has] an ongoing case in the EEOC dealing with retaliation and stealing time (falsifying documents), which is similar to what's going on in this case." (Document No. 36). Plaintiff writes, "[i]f able to gather video footage from the [USPS] this will support claims filed against the [USPS]." Id. These assertions represent the entirety of Plaintiff's Response.

In the "Notice Of Intention To File No Reply" (Document No. 37), Defendant asserts that "[b]ecause replies are limited to matters newly raised in the non-movant's response, Defendant

has no basis on which to reply and gives notice of intention to file no reply, all pursuant to Local Civil Rule 7.1(e)." (Document No. 37).

The undersigned will consider Defendant's arguments for dismissal in turn.

**A. Exhaustion Of Administrative Remedies**

Defendant argues that Plaintiff "improperly seeks to expand the scope of claims and allegations beyond those previously asserted in his formal EEO complaint and administratively exhausted as a necessary prerequisite to this civil action." (Document No. 31, p. 1).

Specifically, Defendant argues that Plaintiff's "July 1, 2021 Complaint of Discrimination in the Postal Service ("Formal EEO Complaint")…concerned only allegations of 'discrimination based on retaliation (prior EEO activity)' with respect to management's February 5, 2021 action disallowing several hours of Plaintiff's time and charging him a single hour of Leave-Without-Pay." (Document No. 31, p. 1). Defendant attaches to the Motion To Dismiss a copy of Plaintiff's administrative complaint filed with the USPS on July 1, 2021. (Document No. 30-1). On this form "EEO Complaint of Discrimination in the Postal Service," only the box for "Retaliation" is checked in the section titled "Type of Discrimination You Are Alleging." Id. at p. 3. The EEO Complaint refers to "[Sheila] Ford stealing [Plaintiff's] time on the date 2/05/2021" and asserts "[a]ll this is retaliation due to filing EEO on [D]arren Canady in 2016." Id.

Defendant asserts that "[b]y contrast, in this lawsuit, Plaintiff's Judicial Complaint seems to add new allegations that USPS's alleged retaliation related <u>not</u> to Plaintiff's past EEO activity but to his race ("African American"), gender/sex ("male"), and disability or perceived disability ("Paranoid Schizophrenia")." (Document No. 31, pp. 1–2) (citing Document No. 1, p. 4). Defendant concedes that "Plaintiff is entitled to seek judicial review after his unsuccessful result with respect to the USPS's EEO investigation and its Final Agency Decision…, later

9

unsuccessfully appealed to the United States Equal Employment Opportunity Commission ("EEOC")," but asserts that "Plaintiff is not permitted to circumvent the mandatory requirement that he first exhaust his administrative remedies as to any claims before this Court, and any unexhausted claims should be dismissed." Id.

Defendant argues "the EEOC charge defines the scope of the plaintiff's right to institute civil suit." Id. at p. 9 (quoting Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2022)). Defendant contends that "[a]lthough administrative complaints are often drafted by non-lawyers and for that reason accorded a liberal construction, even in such cases the Fourth Circuit has observed that '[their] cases make clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge.'" Id. at p. 10 (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005)).

Defendant contends "Plaintiff's Formal EEO Complaint contained only a claim for 'Retaliation (Prior EEO Activity),'" which "was alleged to have been expressed in two…instances": the February 5, 2021, incident, and the May 11, 2021, incident. See (Document No. 31, p. 10). Defendant argues "Plaintiff's Formal EEO Complaint (including the dismissed claim) asserts only Retaliation, and it contains no reference or mention to race, gender/sex, or disability, much less that Plaintiff had been retaliated against or otherwise discriminated against on any or all of these bases." Id. at p. 11.

Defendant argues that "Plaintiff appears to amplify his Retaliation claim…to allege" discrimination based on his race, gender/sex, and disability/perceived disability, "respectively specified by Plaintiff as 'African American,' 'male,' and 'Paranoid Schizophrenia.'" Id. at p. 12 (citing Document No. 1, p. 4). However, Defendant argues, "[t]hese additional bases for Plaintiff's Title VII Retaliation claim are not mentioned at all, much less identified as bases for claim[s], in

10

the Formal EEO Complaint and were not dealt with in the FAD attached to his Judicial Complaint." Id. Thus, Defendant asserts, "[t]hese bases simply were not part of Plaintiff's Formal EEO Complaint or the administrative proceedings that followed with the USPS and then EEOC," and that "for this reason, Plaintiff has not exhausted administrative remedies with respect to any claims of retaliation or other discrimination on the bases of race, gender/sex or disability." Id.

Moreover, Defendant argues, "the administrative proceeding giving rise to this action concerns only the allegation of 'reprisal for prior EEO activity when: On February 5, 2021, management [] *disallowed his time and charged him Leave Without Pay (LWOP).*'" Id. at p. 13. For this reason, Defendant contends:

> Plaintiff's present case, to the extent it regards anything besides the small amount of time Plaintiff was disallowed or charged as LWOP because of alleged retaliation for his past EEO activity, raises claims and allegations not raised in his Formal EEO Complaint, and not reasonably related to the retaliation claim he did raise, and they are barred now for failure to exhaust administrative remedies.

Id.

Defendant also observes that "[a]fter Plaintiff filed his Judicial Complaint in this action on January 14, 2022, …he continued to file (without leave) additional papers." (Document No. 31, p. 13) (citing Document Nos. 18, 19, 20). Defendant contends that "although Plaintiff never characterized these papers as amending or broadening the claims (or their bases) asserted in his Judicial Complaint, these filings reference events not mentioned in his Formal EEO Complaint and which in fact occurred in late 2022 and 2023, long after his Formal EEO Complaint was filed in 2021." Id. Defendant asserts that the issues contained in these filings "were not first presented and administratively exhausted by Plaintiff in any ***prior*** EEO complaint before the institution of this lawsuit," although they "were made the subject of another EEO formal complaint on October

11

22, 2022," and "[t]he proceeding started by that other EEO complaint is ongoing." Id. at pp. 13–14.

The entirety of Plaintiff's short filing in response to this motion is outlined above. *Supra* p. 8. This response references "an ongoing case in the EEOC dealing with retaliation and stealing time (falsifying documents), which is similar to what's going on in this case." (Document No. 36, p. 1).

Defendant, as noted above, filed only a "Notice Of Intention To File No Reply." (Document No. 37).

The undersigned first observes that Plaintiff initiated this civil suit by submitting a form Complaint For Employment Discrimination alleging claims under Title VII for retaliation and discrimination on the basis of race, sex and disability. (Document No. 1). The undersigned agrees with Defendant that to the extent Plaintiff's additional filings following the Complaint may have been intended as amendments to include additional claims or factual allegations, Plaintiff has not obtained leave to amend his Complaint or otherwise made such intent clear. (Document Nos. 18, 19, 20). Moreover, Plaintiff has not alleged administrative exhaustion of any subsequent claims. The undersigned will therefore consider whether Plaintiff's Complaint and its attachments sufficiently allege exhaustion of administrative remedies for the original claims of retaliation and discrimination on the basis of race, sex, and disability in violation of Title VII.

"It is well settled that before filing suit under Title VII…, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. §§ 2000e-5(b), (f)). And, as Defendant notes, "[a] Plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).

12

Here, Plaintiff's Complaint (including attachments) alleges that he pursued administrative remedies and received a Right To Sue letter from the EEOC. (Document No. 1, p. 5). Plaintiff attaches to his Complaint a copy of the Final Agency Decision ("FAD") of the USPS related to these administrative proceedings. (Document No. 1-2, pp. 2–13). The FAD states that Plaintiff "alleged discrimination based on Retaliation (Prior EEO Activity) when…[o]n February 5, 2021, management disallowed his time and charged him with Leave-Without-Pay (LWOP)." Id. at p. 2. The FAD does note that "[i]nitially, the [administrative] complaint included one additional allegation," which "was dismissed for failure to state a claim." Id. Defendant contends the dismissed claim asserted that "on 'May 11, 2021[,] an identified manager [not Plaintiff's manager who disallowed the time and charged LWOP] was loud and aggressive and followed him [Plaintiff] around the building.'" (Document No. 31, p. 8) (quoting Document No. 30-1, pp. 16–17 n.2). But nothing in the Complaint or its attachments clarifies the contents of this second claim; Plaintiff never mentions to the Court any incident on May 11, 2021. And nothing in the FAD suggests in any way that Plaintiff complained of discrimination based on race, gender/sex, or disability status at any time during these administrative proceedings.

Similarly, Defendant asserts that the content of the handwritten documents attached to Plaintiff's Complaint were filed as a part of his administrative charge, with the exception of the sentence, "Please check the camera footage for this date 2/5/2021 to confirm where I was during this time." Id. at p. 15; (Document No. 31, p. 4 n.3). These handwritten pages include a number of nebulous allegations that Plaintiff felt targeted, threatened, and subjected to harassment and a hostile work environment while employed by Defendant. (Document No. 1-2, pp. 14–15). What they again do not include is any allegations of discrimination based on race, gender/sex, or disability status.

13

Even construing Plaintiff's *pro se* Complaint liberally, and taking all allegations contained within it as true, the undersigned observes no indication that Plaintiff pursued administrative remedies for discrimination on the basis of sex, race, or disability. Indeed, neither the FAD nor the Complaint, nor any other document submitted by Plaintiff, contain any mention of his race, sex, or disability status, with the exception of the boxes he checked on the form complaint for discrimination on these bases. (Document No. 1, p. 4). The undersigned thus agrees with Defendant that Plaintiff has not alleged exhaustion of administrative remedies for claims of discrimination on these bases.

With respect to the scope of Plaintiff's retaliation claim, the undersigned again observes that the FAD Plaintiff attached to his Complaint clearly asserts Plaintiff's administrative charge focused specifically on "discrimination based on Retaliation" for the events of February 5, 2021. (Document No. 1-2, p. 2). Considering the clarity of the FAD attached to the Complaint, and in the absence of any argument to the contrary in Plaintiff's response, the undersigned is persuaded by Defendant's contention that Plaintiff has only alleged exhaustion of administrative remedies with respect to his retaliation claim for the events of February 5, 2021. Plaintiff has not argued otherwise, and the undersigned is "not at liberty to read into administrative charges allegations they do not contain." Balas v. Huntington Ingalls Indus., Inc., 711 F. 3d 401, 408 (4th Cir. 2013).

### B. Failure To State A Plausible Claim For Relief

Defendant also argues that Plaintiff fails to state a claim for which relief may be granted. Defendant argues that "[t]o assert a Title VII claim for retaliation for prior protected activity, 'a plaintiff must show that (1) the plaintiff engaged in protected activity, such as filing a complaint with the EEOC'; (2) the employer took an adverse action against the plaintiff; and (3) 'the protected activity was ***causally connected*** to the employer's adverse action.'" (Document No. 31,

14

Case 3:22-cv-00021-RJC-DCK    Document 38    Filed 01/06/25    Page 14 of 17

pp. 14–15) (quoting Okoli v. City of Balt., 648 F.3d 216, 223 (4th Cir. 2011); citing Foster v. University of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015)).

Defendant contends that regarding "the claim of management's loud and aggressive behavior or following Plaintiff around the facility on May 11, 2021, …to the extent that that second retaliation claim has not been abandoned in the EEO process or by its omission in the Judicial Complaint…that alleged action is not material and cannot sustain a retaliation claim." Id. at p. 16.

Defendant also argues that "[f]atally, Plaintiff pleads no facts supporting a plausible causal connection between any protected activity and the time controversy he alleged as retaliation," and that "Plaintiff's vague and conclusory attempts to plead a retaliation claim fail under Rule 12(b)(6)." Id. at p. 17 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Again, Plaintiff's responsive filing contains little to no argument refuting Defendant's assertions. (Document No. 36).

As noted above, Defendant filed only a "Notice Of Intention To File No Reply." (Document No. 37).

As discussed above, the undersigned finds that Plaintiff has only sufficiently alleged exhaustion of administrative remedies for a claim of retaliation related to the events of February 5, 2021. The undersigned will thus limit analysis to this claim.

The undersigned first observes that Plaintiff's form Complaint contains few clear factual allegations. (Document No. 1). Indeed, the section of the form which prompts, "The facts of my case are as follows," is left blank. Any additional factual allegations present in Plaintiff's Complaint are found in the attachments, which as noted above appear to include a copy of the USPS's Final Agency Decision ("FAD") and the handwritten pages Plaintiff seems to have submitted as a component of his administrative charge. (Document No. 1-2).

With respect to the events of February 5, 2021, Plaintiff has alleged an adverse employment action on this date by a supervisor, Sheila Ford, with express knowledge of prior protected activity. See id. at p. 7. The FAD asserts Plaintiff's "most recent prior EEO case…closed on May 5, 2020, eleven months before the events which form the basis of his Claim occurred." (Document No. 1-2, p. 8). Accordingly, as Defendant asserts, "a causal connection based on temporal proximity cannot be established." Id.; (Document No. 31, p. 20). However, "when close temporal proximity is not established, 'courts may look to the intervening period for other evidence of retaliatory animus.'" Russell v. Univ. of N. Carolina at Charlotte, 3:20-CV-172-FDW, 2020 WL 6216827, at *4 (W.D.N.C. Oct. 22, 2020) (quoting Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007)). Construed liberally and taken in the light most favorable to Plaintiff, and especially for purposes of evaluating a motion to dismiss, the undersigned finds the allegations contained in the Complaint and attachments sufficiently give rise to a reasonable inference of retaliation with respect to the events of February 5, 2021.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion To Dismiss" (Document No. 30) be **GRANTED in part** and **DENIED in part**. Specifically, the undersigned recommends that the motion be denied with respect to Plaintiff's claim for retaliation in violation of Title VII based on the events of February 5, 2021, and that the motion be granted with respect to all other claims.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days**

of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: January 3, 2025

David C. Keesler
United States Magistrate Judge

17

Case 3:22-cv-00021-RJC-DCK    Document 38    Filed 01/06/25    Page 17 of 17